UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHANNAN RAMSAY,

     Plaintiff,

  -against-

NATIONAL RAILROAD PASSENGER CORP.,

     Defendant.

**Memorandum & Order**


12cv1999 (MHD)

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE:


  Plaintiff Shannan Ramsay has sued the National Railroad Passenger Corporation ("Amtrak") under the Federal Employers Liability Act ("FELA"), 45 U.S.C. § 51 <u>et</u> <u>seq.</u>, for physical and emotional injuries allegedly arising out of an incident that occurred on August 6, 2009 in New York Penn Station during the course of her duties as an employee of Amtrak, a common carrier by rail covered under FELA. At the conclusion of discovery, defendant moved for summary judgment. For the reasons below, we deny defendant's motion.

## I.  THE EVIDENTIARY RECORD

On August 6, 2009, Ms. Ramsay, an Amtrak employee for approximately nine years at the time of the incident,[1] was assigned the evening shift, from 9:00 P.M. to 5:30 A.M., as overnight attendant to the passenger waiting area in New York City Penn Station. (Defendant's Rule 56.1 Statement ("Def. Facts") ¶ 2; Def. Ex. J, Ramsay Dep. 29:16). Plaintiff usually worked by herself in this position, greeting customers and monitoring the seating area to ensure that entry was limited to ticketed passengers. (Def. Ex. J, Ramsay Dep. 27:17-28:12 & 30:8-23). It is unclear from the record when plaintiff began working as the overnight waiting area attendant, but it appears to have been for at least several months prior to the incident of August 6, 2009.[2]

The Penn Station waiting area to which Ms. Ramsay was assigned is located by the Track 9 & 10 East escalator (Pl. Ex.

_____

[1] According to plaintiff's response to defendant's interrogatories, she began work for defendant in February of 2010. (Def. Ex. C ¶ 1(e)). However, this statement was corrected during plaintiff's deposition, when she testified that her actual start date was in 2000. (Def. Ex. J, Ramsay Dep. 23:18-21).

[2] Plaintiff was unable to recall her start date in this assignment (Def. Ex. J, Ramsay Dep. 29:4-9), but we infer it was sometime in 2008 because she had a medical leave in February 2009 and was already assigned to the waiting area position at that time. (Id. at 47:11-48:16)

2

4 ¶ 2) and features a desk "like a silver booth" to the left as one enters the area. (Def. Ex. J, Ramsay Dep. 32:10-22). The seating area has a second section with two more entrances, but at the time of the incident plaintiff was the only attendant assigned to the area. (Id. at 33:2-8).

For some uncertain amount of time prior to August 2009, Mr. Charles Jackson, the union official whose responsibilities included the Amtrak areas of Penn Station, had raised concerns on an "almost daily" basis with Amtrak police officers, plaintiff's supervisors, and a more senior Amtrak official that intoxicated individuals without proper tickets "repeatedly harassed, threatened and intimidated passengers and Amtrak employees" in the seating area. (Affidavit of Charles Jackson, Pl. Ex. 4 ¶¶ 6-9).[3] The overnight hours saw the most problematic behavior. (Id. ¶¶ 4-5). In particular, between 10:30 P.M. and 11:00 P.M., when police personnel were unavailable due to shift changes, roll calls running over, and staffing shortages, the police booth near plaintiff's seating area would not be staffed.

---

[3] Mr. Jackson, the Union Division Chairman, stated in his affidavit that he had brought these problems to the attention of Mike Gallagher, Amtrak Superintendent of Customer Services for Penn Station, as well as Debbie Hoeler and Bruce Scottland. (Pl. Ex. 4 ¶ 9). Plaintiff identified Ms. Hoeler and Mr. Scottland as two of her three supervisors when she worked as the waiting area attendant in 2009. (Def. Ex. J, Ramsay Dep. 28:13-19).

(Id. at ¶ 8). Plaintiff also testified at her deposition that she had informed her supervisor, Mike Gallagher, about a series of dangerous incidents that had happened in the seating area that she monitored. (Def. Ex. J, Ramsay Dep. 62:6-14).

At 10:35 P.M. on August 6, 2009, three young people who appeared to plaintiff to be intoxicated attempted to enter the seating area, but refused to show plaintiff their tickets when she asked them to do so. (Def. Facts ¶ 4). Plaintiff testified that one man in the group responded to her instruction to show his ticket with curses and name-calling, to which she replied "why are you talking to me like this, do you speak to your mother like this?" (Def. Ex. J, Ramsay Dep. 58:9-22). One of these individuals shoved -- or, in alterative versions, threw or rammed -- the desk telephone at plaintiff, hitting her on the left side of her stomach. (Def. Facts ¶ 4; Pl. Counter Statement ¶ 4). A witness interviewed by Amtrak police shortly after the incident reporting having heard yelling between plaintiff and the male assailant. (Def. Ex. F at 2). Both the witness and plaintiff reported that the attack with the telephone occurred after the verbal exchange between plaintiff and the assailant. (Def. Ex. F at 2; Def. Ex. J, Ramsay Dep. 58:20-22).

An emergency medical team was summoned to examine Ms. Ramsay, who complained of pain in her belly, but she indicated to them that she felt "fine" and finished her shift that night. (Def. Facts ¶ 5; Pl. Counter Statement ¶ 5; Def. Ex. F at 2). Nonetheless, plaintiff testified that she had experienced severe pain in her stomach at the site where she was rammed with the telephone, and that this pain increased in intensity over the next week, causing her to see a doctor. (Def. Ex. J, Ramsay Dep. 64:6-65:24, 76:20-25). She also testified that she has had long-term feelings of anxiety since the attack, including a sense of insecurity in large crowds. (Id. at 76:20-77:24). She reported that she has been taking medication to control her symptoms of depression, anxiety, and sleeplessness since the incident. (Id. at 78:1-17).

Nearly a month after the incident, on September 9, 2009, plaintiff sought treatment from her primary care physician, Dr. Michael A. Renzi. She related the incident to Dr. Renzi and reported that she had vomited shortly thereafter, but that her symptoms had resolved in two days. (Def. Ex. H at 1). The doctor diagnosed diverticulosis of the colon and recommended a follow-up CT scan of her abdomen. (Id.). Neither party provided any additional evidence reflecting medical treatment sought by

plaintiff in the months immediately subsequent to the August 6, 2009 incident.

Regarding plaintiff's allegations of emotional injuries, she had a history of "generalized anxiety disorder/depression" dating to April of 2007, when she took a two-month medical leave from her employment at Amtrak. (Def. Ex. K). In support of plaintiff's claim in this respect, licensed social worker Shelley Lukoff provided a letter dated February 22, 2013 and an affidavit signed October 29, 2014 addressing her treatment of plaintiff from March 25, 2012, "sporadically," through May 6, 2014. (Def. Ex. E; Pl. Ex 5). Ms. Lukoff described the incident, as recounted to her by plaintiff, mentioned that plaintiff had undergone some psychotherapy by another therapist starting in May 2010, and opined that plaintiff has suffered from symptoms of Post Traumatic Stress Disorder ("PTSD") as well as anxiety and depression arising from the August 2009 assault. (Def. Ex. E at 1-2; Pl. Ex. 5 ¶¶ 6-7, 11).

The record also reflects that plaintiff had some prior medical history. Notably, in February of 2009 plaintiff donated a kidney. She returned to the operating surgeon, Dr. Lloyd

Ratner, some months later, apparently in June 2009,[4] for a follow-up appointment at which she reported improvement from the original incisional pain in her left abdomen, but some persistent tenderness. (Pl. Ex. 8). Plaintiff also reported feeling poorly to her primary-care physician in June 2009, following the kidney surgery. (Def. Facts ¶ 19). In July of 2010 plaintiff saw Dr. Ratner again for "chronic complaints of abdominal pain." (Pl. Ex. 9). The doctor noted tenderness of the left abdomen but did not detect a hernia and observed that a recent CT scan was negative. (Id.). He ultimately determined that "she has some form of chronic pain of undetermined etiology with a significant psychologic overlay." (Id.). The doctor offered no opinion in his report regarding whether plaintiff's complaints in July 2010 relate to the August 2009 incident.

## II.   SUMMARY JUDGMENT STANDARDS

Summary judgment will be granted when "the movant shows that there is no genuine dispute as to any material fact and the

---

[4] The clinic note from Dr. Lloyd Ratner indicates that it was dictated on June 6, 2009, but the header date for the note is September 9, 2009. Neither party clarifies whether Dr. Ratner saw Ms. Ramsay in June, prior to the incident, or in September, following the incident. We observe that a second treatment note from Dr. Ratner was dictated on July 26, 2010, but provides a date of August 13, 2010, leading us to infer that the visit documented in Pl. Ex. 8 is from June of 2009 and therefore not probative of any alleged causation from the August incident at the center of this litigation.

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law [while] [a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Shade v. Hous. Auth. of the City of New Haven, 251 F.3d 307, 314 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). It is axiomatic that the responsibility of the court in deciding a summary-judgment motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986); see, e.g., Anderson, 477 U.S. at 255; Howley v. Town of Stratford, 217 F.3d 141, 150-51 (2d Cir. 2000).

    The movant bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that demonstrate the absence of a genuine issue of material fact. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If the non-moving party has the burden of proof on a specific issue, the movant may satisfy its initial burden by

demonstrating the absence of evidence in support of an essential element of the non-moving party's claim. See, e.g., id. at 322-23, 325; PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002); Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

The court must view all evidence in the light most favorable to the non-moving party, Overton v. N.Y. State Div. of Military & Naval Affairs, 373 F.3d 83, 89 (2d Cir. 2004), and must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004). "[A]ll doubts as to the existence of a genuine issue for trial should be resolved against the moving party," Brady v. Town of Colchester, 863 F.2d 205, 210 (2d Cir. 1988) (citing Celotex, 477 U.S. at 330 n. 2), but "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[;] [f]actual disputes that are irrelevant or unnecessary will not be counted." Anderson, 447 U.S. at 248.

If the movant fails to meet its initial burden, the motion will fail even if the opponent does not submit any evidentiary

materials to establish a genuine factual issue for trial. See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 160 (1970); Giannullo, 322 F.3d at 140-41. If, on the other hand, the moving party carries its initial burden, the opposing party must then shoulder the burden of demonstrating a genuine issue of material fact on any such challenged element of her claim or defense. See, e.g., Beard v. Banks, 548 U.S. 521, 529 (2006); Celotex, 477 U.S. at 323-24; Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001). She must also "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Woodman v. WWOR-TV, Inc., 411 F.3d 69, 75 (2d Cir. 2005). Rather, she must present specific evidence in support of her contention that there is a genuine dispute as to the material facts. See, e.g., Celotex, 477 U.S. at 324; Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998); Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 526 (2d Cir. 1994).

## III.  ANALYSIS

Defendant moves for summary judgment based on two assertions: 1) that defendant did not breach its duty of care to plaintiff because the incident of August 6, 2009 was not a reasonably foreseeable danger, and 2) that plaintiff has not provided testimony from a medical expert to demonstrate that her

10

injuries were caused by the incident. (Defendant's Memorandum of Law in Support of Motion ("Def. Mem.") 9-10, 13). Plaintiff counters that (1) under FELA's relaxed standards for negligence she has indeed established a triable issue as to whether defendant breached its duty to provide her with a safe workplace, and (2) that she has provided acceptable evidence to demonstrate causation. (Plaintiff's Memorandum of Law in Opposition ("Pl. Oppos.") 6-10).

For the reasons provided below, we find that, under the standards of negligence and causation applicable to FELA claims, plaintiff has presented sufficient evidence to demonstrate her right to have a jury determine the facts of the case.

### A. FELA Legal Standards

In response to the frequency of injuries experienced by railroad workers in the early twentieth century, Congress enacted FELA, 45 U.S.C. § 51 et seq.. See, e.g., CSX Transp., Inc. v. McBride, 131 S. Ct. 2630, 2636 (2011). In shifting the burden of such injuries from the injured workers to their employers, FELA authorized railroad employees to obtain compensation "for injuries sustained in the course of their employment." Id. (citing Consolidated R. Corp. v. Gottshall, 512 U.S. 532, 542 (1994)). That liability "is as broad as it could

11

be framed" due to the "humanitarian" and "remedial" goals of the Act. Id. (citing Urie v. Thompson, 337 U.S. 163, 181 (1949); Gottshall, 512 U.S. at 542-43)).

Unlike tort litigation at common law, "[u]nder FELA the test is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." Id. (quoting Rogers v. Missouri Pacific R.R., 352 U.S. 500, 506 (1957))(emphasis added). Indeed, FELA significantly relaxes the common-law standards for both negligence and causation. Id.; Williams v. Long Island R.R. Co., 196 F.3d 402, 406 (2d Cir. 1999)("this Circuit has explicitly stated that it construes 'the statute, in light of its broad remedial nature, as creating a relaxed standard for negligence as well as causation.'") (quoting Ulfik v. Metro-North Commuter R.R., 77 F.3d 54, 58 & n.1 (2d Cir. 1996)). Under FELA, "an employer may be held liable . . . 'for risks that would be too remote to support liability under common law.'" Id. at 407 (quoting Syverson v. Consol. Rail Corp., 19 F.3d 824, 826 (2d Cir. 1994).

The courts' liberal construction of FELA does not represent a complete rejection of the "common-law concepts of negligence

12

and injury." Gottshall, 512 U.S. at 543. The relaxed standards for negligence and causation still require proof of both, although the statute does abrogate the common-law defenses of contributory negligence and assumption of risk. Id. at 543-44. FELA "is not a workmen's compensation statute," since "evidence of defendant's negligence is required and . . . the fact an employee is injured is not proof of negligence of the carrier." Eaton v. Long Island R. Co., 398 F.2d 738, 741 (2d Cir. 1968)(citing cases). However, we must approach the requirement of a showing of negligence and causation with the understanding that FELA "has been construed as an avowed departure from the rules of the common law. . . ." Id. (internal citations omitted).

An essential, distinctive feature of FELA is the primacy of the jury determination. "'To deprive [FELA plaintiffs] of the benefit of a jury trial in close or doubtful cases is to take away a goodly portion of the relief which Congress has afforded them' under the statute." O'Connell v. Nat'l R.R. Passenger Corp., 922 F.2d 1039, 1042 (2d Cir. 1991)(quoting Baily v. Central Vermont Ry., 319 U.S. 350, 354 (1943)). The Supreme Court articulated the test for deciding whether liability under FELA may be rejected as a matter of law, or whether that determination must go to a jury:

13

> Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion <u>that employer negligence played any part, even the slightest,</u> in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes. . . . <u>Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry</u> whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out <u>whether or not the evidence allows the jury a choice of other probabilities</u>. The statute expressly imposes liability upon the employer to pay damages for injury or death due 'in whole or in part' to its negligence.

<u>Rogers</u>, 352 U.S. at 506-07 (emphasis added). This standard has not been altered over the decades since it was announced. <u>See</u> <u>CSX Transp., Inc.</u>, 131 S. Ct. at 2636; <u>Williams</u>, 196 F.3d at 407 ("only in instances where reasonable jurors could reach only one conclusion may the court take the determination from the jury and decide the question as a matter of law.")(quoting <u>Gallose v. Long Island R.R. Co.</u>, 878 F.2d 80, 85 (2d Cir. 1989)); <u>Eggert v. Norfolks & W. Ry. Co.</u>, 538 F.2d 509, 511 (2d Cir. 1976)("It is well established that the role of the jury is significantly greater in FELA cases than in common law negligence actions."); <u>Eaton</u>, 398 F.2d at 741.

14

Particularly at summary judgment, then, we are cautioned that our role is quite limited. See Hananburgh v. Metro-N. Commuter R.R., 2015 WL 1267145, *3 (S.D.N.Y Mar. 18, 2015)("accordingly, a case brought under FELA 'must not be dismissed at the summary judgment phase unless there is absolutely no reasonable basis for a jury to find for the plaintiff.'" (quoting Syverson, 19 F.3d at 828)); Kendall v. Metro-N. Commuter R.R., 2014 WL 1885528, *2 (S.D.N.Y. May 12, 2014) (noting that FELA requires a "plaintiff-friendly" summary-judgment standard, such that "a FELA case 'must not be dismissed at the summary judgment phase unless there is absolutely no reasonable basis for a jury to find for the plaintiff.'")(emphasis in original)(quoting Syverson, 19 F.3d at 828)).

**B. Defendant's Motion**

Defendant moves for summary judgment first on the ground that plaintiff has not made a prima facie case of negligence. Defendant's second basis for seeking summary judgment is that plaintiff has not provided evidence of the causal link between the incident of August 6, 2009 and her injuries. We address each argument in turn.

15

### 1. Defendant's Negligence

Defendant asserts that its duty to plaintiff does not require it to be the "insurer of the safety of [its] employees while they are on duty." (Def. Reply 2)(quoting <u>Gottshall</u>, 512 U.S. at 543). Defendant argues that plaintiff's proffer of an affidavit by her union official, Charles Jackson, regarding unsafe conditions during the overnight hours at Penn Station is inadequate to demonstrate the breach of a reasonable-care standard -- or, in defendant's own words, it was entirely unforeseeable and beyond Amtrak's ability to protect an employee from "an apparently intoxicated individual [] throw[ing] a phone at plaintiff's abdomen." (<u>Id.</u> at 2). Defendant notes that plaintiff has not supported her claim with a report from a liability expert, and that the union official's personal beliefs are irrelevant as to what Amtrak did or should have done to address safety issues at Penn Station. (<u>Id.</u> at 4). Defendant also criticizes plaintiff's showing as unaccompanied by crime statistics or documented employee complaints to support the assertions set forth in Mr. Jackson's affidavit and plaintiff's opposition brief. (<u>Id.</u> at 4). Finally, defendant asserts that plaintiff did not provide any evidence of her own pre-incident complaints either to Mr. Jackson or to Amtrak that she felt unsafe. (<u>Id.</u> at 5).

16

Plaintiff counters that Mr. Jackson's affidavit sufficiently establishes defendant's negligence. (Pl. Oppos. 7-8). Mr. Jackson recounts a record of prevalent nighttime incidents involving intoxicated passengers and otherwise problematic interactions in the waiting area that threatened Amtrak employees, including plaintiff, as well as insufficient police staffing at the precise time of evening when the incident involving plaintiff occurred. He further documents the fact that defendant's police officers and supervisors were aware of the situation before August 6, 2009.

We conclude that plaintiff has provided sufficient evidence of defendant's negligence to preserve the matter for a jury's determination. "Reasonable care is determined in light of whether or not a particular danger was foreseeable." Syverson, 19 F.3d at 826. Plaintiff has proffered evidence indicating that defendant had notice that passengers and Amtrak attendants alike were being harassed and intimidated at night by intoxicated persons in and around the waiting area where plaintiff was assigned. Therefore, whether the risk of injury to plaintiff from a drunken passenger was foreseeable is a triable issue.

As to whether employer negligence played even the slightest role in producing plaintiff's injury, we find there is also

sufficient evidence to render this question one for a jury. First, the union official claims that prior to plaintiff's injury, he had made both Amtrak police and plaintiff's supervisors aware of the problems in the waiting area. Second, he also stated that he had made these Amtrak officials aware that the risk was particularly severe between 10:30 P.M. and 11:00 P.M. -- when the injury in fact occurred -- because of a lack of staffing at the police booth near the waiting area. Third, plaintiff has proffered evidence that at the time of her assault there were no police in the vicinity. A trier of fact could surely infer that a visible police presence there would have dissuaded even an inebriated commuter from assaulting plaintiff or that a police officer in the vicinity might have directly prevented the incident from escalating from the verbal to the physical. Given this record, a trier of fact could find that defendant was negligent in its staffing of the police booth, and that this negligence played a part in the injury that plaintiff suffered.

In reaching this conclusion, we take note of other cases addressing claims of railroad negligence when an employee's injury was sustained at the hands of a third party. In Syverson, the Second Circuit reversed a district court's grant of summary judgment to the defendant railroad because it was known to the

18

defendant that the area where the plaintiff was attacked by an unknown individual "was a magnet for vagrants, many of whom were alcoholics or drug addicts." 19 F.3d at 827. The plaintiff in that case had provided affidavits that police officers had expressed concern about these conditions; therefore, even though the evidence was thin, "it [was] enough under FELA to raise a jury question as to whether the railroad exercised reasonable care, given what was reasonably foreseeable, to furnish [plaintiff] with a safe workplace." Id.

The Syverson court derived analytical parallels from Gallick v. Baltimore & Ohio R.R. Co., 372 U.S. 108 (1963), in which the defendant was held liable for the plaintiff's loss of his leg from a severe reaction to a bug bite. 19 F.3d at 827. In Gallick, the railroad had permitted a stagnant pool of water to remain unmitigated so that it became fetid and attracted vermin and insects, one of which caused the employee's injury. 372 U.S. at 109. The Supreme Court reasoned that

> when the jury found these facts: petitioner was bitten by an insect; the insect bite caused illness or disease and led to petitioner's present physical condition; the stagnant pool attracted bugs and vermin and was responsible for the insect bite and the injuries to petitioner; and respondent knew that the accumulation of the pool of water would attract bugs and vermin to the area -- it is clear that the jury concluded that respondent should have realized the increased likelihood of an insect's biting

19

> petitioner while he was working in the vicinity of
> the pool.

Id. at 118-19. The Gallick Court held that a causal link based
only an increased likelihood of injury was sufficient under FELA
to permit a jury to determine the issue.

The Syverson court also analogized to Gallose v. Long
Island R.R., 878 F.2d 80 (2d Cir. 1989), in which the Court
reversed and remanded following a jury verdict in favor of
defendants, because the jury had been improperly instructed
regarding breach of duty, in a case in which one railroad
employee had brought her dog to work and it bit another
employee. 19 F.3d at 828. The question "was whether the railroad
knew or should have known that there was a dog on its premises,
'and if so, whether an employer using reasonable care should
have investigated further or taken other steps to inform and
protect its employees.'" Id. (quoting Gallose, 878 F.2d at 85).

In short, the law under FELA is "significantly different
from the ordinary common-law negligence action." Id. (quoting
Gallose, 878 F.2d at 86). Here, evidence has been presented that
the railroad should have known that there was a risk presented
by unruly individuals in the waiting area and an absence of law-
enforcement personnel; therefore, there is a question for the

jury regarding whether an employer using reasonable care would have taken steps to protect plaintiff.

Defendant's reliance on Hartel v. Long Island R.R. Co., 476 F.2d 462 (2d Cir. 1973), as a holding to the contrary is misplaced. (See Def. Mem. 12). In Hartel, the circuit court affirmed a judgment for the defendant in a case in which a ticket agent had been killed in a felony robbery at a train station, even though evidence had been presented of recent similar robberies at stations between five and 30 miles from the station in question. Id. at 464. In a subsequent decision, the Second Circuit distinguished Hartel in a manner quite relevant to our case. See Burns v. Penn Cent. Co., 519 F.2d 512 (2d Cir. 1975). In Burns, a railroad employee had been killed by a rifle shot when he was riding the bottom step of an open train door as the train approached a station. Id. at 515. The plaintiff in that case had presented evidence of several recent incidents in which trains had been stoned approaching the same station. Id. at 514-15. The Second Circuit, in Burns, held that the plaintiff had a triable case, and in doing so, it distinguished Hartel, because the prior incidents in Burns had occurred at "substantially the same place" as the one involved in the litigation. 519 F.2d at 515. The Court reasoned that the stonings were "obviously relevant" because they had occurred at

the same location. According to the Court, "Mrs. Burns is entitled, then, nothing in Hartel to the contrary, to a jury verdict premised upon a record including proof of incidents of a similar nature within recent months transpiring in the general vicinity of the accident." Id.[5]

Here, plaintiff has made a showing that similar incidents of intoxicated individuals harassing employees had occurred in the same waiting area where plaintiff sustained her injury. Under Burns, the evidence of previous similar incidents at the same location is sufficient to establish a question for the jury as to whether defendant should have known of the risk to plaintiff.

We find that defendant cannot prevail at summary judgment on the question of negligence. Indeed, as noted, substantial controlling case law supports presenting the matter to a jury even when there is only slight evidence of railroad negligence in connection with an injury caused by a third party. While a jury may or may not choose to credit Mr. Jackson's testimony in

---

[5] The Second Circuit also noted that it was difficult to square the Hartel decision with other precedent, but that it was not called upon to evaluate the merits of Hartel. It did, however, suggest the wisdom of Justice Douglas's dissent from the denial of certiorari in Hartel. Burns, 519 F.2d at 515 n.4 (citing 414 U.S. 980, 980-82 (1973)).

arriving at a determination of negligence, it is certainly sufficient -- even without crime statistics or expert testimony -- to create a question of fact for the jury regarding whether defendant was aware of an unsafe environment in the waiting area, and, if so, whether defendant took reasonable steps to investigate and mitigate that risk.

### 2. Evidence of Causation of Injury

Defendant argues that without an expert to prove the causal link between the incident and plaintiff's alleged injuries, the case must be dismissed. (Def. Mem. 13). Defendant claims that plaintiff's medical evidence does not include an expert report establishing the injuries arising from the August 6, 2009 incident, and that in the case of a plaintiff with a complex medical history and "significant psychological overlay" to her ailments, an expert opinion is necessary to establish causation. (Id. at 14). Defendant further objects to the inclusion of the Lukoff affidavit dated October 29, 2014 (Pl. Ex. 5) because it does not address the August 2009 incident, and improperly alleges for the first time that plaintiff's PTSD was caused by that incident.

Plaintiff counters that a report from a retained expert is not necessary to demonstrate that pain would arise from being

hit in the area of the abdomen which had been the site of a recent kidney operation. (Pl. Oppos. 9). Moreover, plaintiff asserts that psychological distress arising from physical pain may be generally understood without an expert opinion, although it might limit the recoverable damages. (Id.). In any event, plaintiff argues, she has supplied expert evidence and is compliant with the dictates of Rule 26 with regard to evidence supplied by her treatment providers, as distinguished from the opinion testimony of a retained expert. (Id. at 10)(citing D'Attore v. Salmon, 572 Fed. App'x 17, 19 (2d Cir. 2014)("The plain language of Federal Rule of Civil Procedure 26 -- amended in 2010 -- does not require a report from treating physicians, because they are not 'retained or specially employed to provide expert testimony.'"). Finally, plaintiff asserts that the evidence provided by her treatment providers suffices to establish causation. (Id.).

First, we observe that courts in this Circuit "have regularly held that treating physicians may testify as to opinions formed during their treatment, including causation" without the submission of an expert report, Williams v. Regus Mgmt. Grp., LLC, 2012 WL 1711378, *3 (S.D.N.Y. May 11, 2012)(emphasis in original)(citing cases), and plaintiff has correctly articulated the distinction in the rules governing an

24

expert who is a treating source and an expert retained to provide an opinion. The rules of discovery require a more limited disclosure from a treating physician than from a retained expert, who must submit a formal and detailed report. Fed. R. Civ. P. 26(a)(2). "A treating physician . . . can be deposed or called to testify at trial without any requirement for a written report." <u>Kendall</u>, 2014 WL 1885528 at *6 (quoting Advisory Committee Note based on 1993 Amendments to Rule 26, Fed. R. Civ. P.). Here, plaintiff disclosed her treatment providers in her Rule 26 submission and provided records from her treating sources. (Def. Ex. B at 2, E, G-I). She was not required to provide more information regarding her medical and psychotherapeutic treatment and the substance of the anticipated medical testimony.

Second, we reiterate that FELA requires a relaxed standard for causation, and as a result cases go to the jury on far more tenuous causal links than at common law. <u>See</u>, <u>e.g.</u>, <u>Tufariello v. Long Island R. Co.</u>, 458 F.3d 80, 87 (2d Cir. 2006)(unlike a common-law tort claim, for which a plaintiff must show that "defendant's conduct was a 'substantial factor in bringing about the harm,'" FELA's relaxed standard requires only that "'employer negligence played any part, even the slightest, in producing the injury or death for which damages are

sought.'")(quoting Rogers, 352 U.S. at 506). "The burden of the employee is met, and the obligation of the employer to pay damages arises, when there is proof, even though entirely circumstantial, from which the jury may with reason make that inference [of causation]." Kendall, 2014 WL 1885528 at *5 (emphasis in original)(quoting Rogers, 352 U.S. at 508).

Under FELA, "[c]ircumstantial evidence, expert testimony or common knowledge may be the basis from which the causal sequence may be inferred." Id. at *5 (emphasis in original)(quoting Ulfik, 77 F.3d at 60). For instance, in Ulfik, judgment for defendant as a matter of law was reversed on appeal in part because the plaintiff did not need to provide expert evidence for something "the trier of fact could reasonably determine" -- whether paint fumes inhaled at work could cause the dizziness that resulted in plaintiff falling down a flight of stairs. 77 F.3d at 59-60.

The Second Circuit also vacated a dismissal -- "in the absence of expert testimony" -- of a case brought by an employee who claimed that loud train horns had harmed his hearing. Tufariello, 458 F.3d at 88. The Court explained that "there is a generally understood causal connection between physical phenomena -- in this case, very loud sounds, which we refer to

colloquially as 'deafening' -- and the alleged injury that would be obvious to laymen." Id. (internal quotations omitted). Emphasizing FELA's liberal causation standards, the Court reasoned that since Tufariello had provided evidence from his doctor demonstrating his hearing loss, as well as evidence documenting noise levels emitted by the train horn, it did not "think that the plaintiff must produce objective measurements of the sound levels to carry his burden under FELA of showing" causation. Id. at 90. Moreover, the Court held that evidence provided by the plaintiff's physician that plaintiff had suffered hearing loss was sufficient for a jury to determine whether "the LIRR's negligence in failing to give Tufariello protective equipment played any part, even the slightest," in causing the plaintiff's injury. Id. (internal quotation omitted).

Similarly, in Kendall, the court denied defendant's motion for summary judgment based on evidence that plaintiff had been exposed to heavy vibrations from power equipment that he gripped with his hands and that plaintiff's doctor had diagnosed him with carpal tunnel syndrome. As the court noted, laymen were sufficiently equipped to determine whether defendant's failure to provide plaintiff with shock-absorbing gloves "caused, at least in part," plaintiff's injury. 2014 WL 1885528 at *5.

27

The need for expert opinions on causation is limited in this Circuit to cases "where some 'special expertise is necessary to draw a causal inference.'" <u>Ulfik</u>, 77 F.3d at 59 (quoting <u>Claar v. Burlington Northern Railroad Co.</u>, 29 F.3d 499, 504 (9th Cir. 1994), and citing <u>Moody v. Maine Central Railroad Co.</u>, 823 F.2d 693, 695 (1st Cir. 1987)). For example, in <u>Wills v. Amerada Hess Corp.</u>, the Second Circuit held that "the causal link between exposure to toxins and other behavior and squamous cell carcinoma is sufficiently beyond the knowledge of the lay juror that expert testimony is required to establish causation." 379 F.3d 32, 46 (2d Cir. 2004)(citing <u>Claar</u>, 29 F.3d at 504).

Defendant's causation argument fails with respect to plaintiff's claimed physical injury. Unlike the complexities of carcinogens, which require expert explanation, the causal link between having a telephone rammed into one's stomach (Def. Ex. J, Ramsay Dep. 58:20-22) and physical pain and discomfort can be understood by lay people. The record does not provide much evidence of Ms. Ramsay's physical injury other than testimony about the pain caused by the initial blow with the telephone (<u>see</u> discussion pp. 4-5 <u>supra</u>), but that would be a consideration going to the size of any damage award, rather than demonstrating as a matter of law that the railroad is not liable.

28

As for plaintiff's claim of emotional distress caused by defendant's alleged negligence, such claims are cognizable under FELA, and we look to the common law for guidance as to how to analyze evidence of such injuries. Gottshall, 512 U.S. at 551-52, 557. The Gottshall Court explained that aside from the FELA statute's express rejection of several common-law principles -- notably the abrogation of the contributory-negligence and assumption-of-risk defenses -- common-law principles "are entitled to great weight" in an analysis of a claim on which the statute is silent. Id. at 543-44. In holding that emotional distress is a cognizable claim under FELA, the Gottschall Court had evaluated the various common law principles applied to analyze negligent infliction of emotional distress and it adopted that test, which was most consistent with "FELA's broad remedial goals." Id. at 555.

Here, defendant asks us to reject plaintiff's claim of emotional distress because she has purportedly not provided expert evidence to establish that the incident with the unruly passenger caused her such distress. (Def. Mem. 15). This argument fails at multiple levels. First, even in the absence of this expert testimony, the common law of New York, to which we look for guidance, see, e.g., Stampf v. Long Island R. Co., 761 F.3d 192, 206-07 (2d Cir. 2014), would allow plaintiff's claim

29

to survive based on her personal testimony. New York courts do not require expert testimony to establish the existence or causation of emotional distress. Allinger v. City of Utica, 226 A.D.2d 1118, 1119-20, 641 N.Y.S.2d 959, 960 (4th Dept. 1996)(citing cases). Jurors may evaluate plaintiff's testimony and "'draw their conclusions [about causation] from their own knowledge or experience.'" Id. at 1120, 641 N.Y.S.2d at 960 (quoting Shaw v Tague, 257 N.Y. 193, 195, 177 N.E. 417 (1931), and citing Ingleston v. Francis, 206 A.D.2d 745, 745, 614 N.Y.S.2d 649 (3d Dept. 1994)). Federal caselaw is to the same effect. Plaintiff may recover damages for emotional distress based on evidence that does not include testimony by a psychiatric specialist. See, e.g., Zeno v. Pine Plains Cent. Sch. Dist., 702 F.3d 655, 672 (2d Cir. 2012); Leo v. Long Island R. Co., 2015 WL 1958906, *27-28 (S.D.N.Y. Apr. 30, 2015)(citing cases); Bick v. City of New York, 1998 WL 190283, *26 (S.D.N.Y. Apr. 21, 1998)(citing cases). Such a rule, of course, is consistent with "FELA's broad remedial purposes," Gottshall, 512 U.S. at 555, and the importance of a FELA plaintiff's right to a jury verdict. O'Connell, 922 F.2d at 1042.

Second, plaintiff does provide competent medical evidence of psychological dysfunction and a potential causal relationship to the incidents in the form of submissions from her social

worker. The letter and affidavit from Ms. Lukoff competently document plaintiff's psychological status and its arguable relationship to the incident at the center of this litigation. (Def. Ex. E; Pl. Ex 5).[6] Moreover, additional evidence for the

---

[6] In attacking the Lukoff submissions, defendant argues that that (1) the February 22, 2013 letter submitted by plaintiff's social worker (Def. Ex. E) attributes plaintiff's stress only to her "employment environment" generally and not to the incident being litigated, and (2) the social worker's October 29, 2014 affidavit, in which she addresses the causal link between the incident and plaintiff's PTSD, violates Rule 26(a). Neither argument is availing. First, the social worker's February 2013 letter directly recounts the August 2009 incident as plaintiff described it to her (albeit using an incorrect date) and specifically attributes aspects of plaintiff's emotional distress to that incident. (Def. Ex. 5 at 1). Second, Ms. Lukoff may have used more explicit language regarding causation in her affidavit, but even her first letter already tied the incident of August 2009 to the subsequent symptoms of PTSD. The social worker expressly discussed plaintiff's PTSD symptoms in the February 2013 letter, and, from the context of that letter, it is also plain to us that she related the source of PTSD to the August 2009 incident since she interweaved the PTSD symptoms of depression and anxiety with the feelings of vulnerability that arose from the incident. (Id. at 2). Furthermore, on summary judgment we are required to read any ambiguities in the evidence in favor of the party opposing the motion, e.g., Overton, 373 F.3d at 89, and the Lukoff submissions, so read, plainly support plaintiff's contentions about causation. Third, the Lukoff affidavit does not contravene Rule 26(a). Defendant's argument seems to be that the affidavit reflects an opinion that was not previously disclosed -- in effect, an argument that the Lukoff 2013 letter does not implicate the incident as a causal factor in plaintiff's psychological status. As we have noted, the letter is fairly read as consistent with plaintiff's contention. Furthermore, defendant appears to be implying that Lukoff's testimony should be excluded because she offers an opinion not contained in an expert "report" (see Reply at 8), see, e.g., Stampf, 761 F.3d at 203-04 (citing Fed. R. Civ. P. 26(a)(2)), but a plaintiff need not provide an expert's report for a

psychological impact of the assault may be found in deposition testimony by plaintiff that she was treated as early as 2007 for anxiety caused by workplace interactions. (Def. Ex. J, Ramsay Dep. 37:6-38:22). This evidence at least suggests plaintiff's pre-existing emotional vulnerability to workplace stressors. Finally, a trier of fact could simply infer, without other evidence, that suffering an assault as plaintiff describes it would likely cause some distress even to less sensitive individuals.[7]

In sum, given the minimal showing of causation necessary to reserve a factual matter for the jury in FELA claims, we find

_____

treating source (see pp. 24-25, supra), and Lukoff fits squarely in this category.

[7] Even without the physical blow, plaintiff could potentially recover for emotional distress caused by such an encounter. The Supreme Court has held that claims for the negligent infliction of emotional distress are evaluated by the common-law zone-of-danger test. Gottschall, 512 U.S. at 554.

> Under this test, a worker within the zone of danger of physical impact will be able to recover for emotional injury caused by fear of physical injury to himself. . . . Railroad employees thus will be able to recover for injuries -- physical and emotional -- caused by the negligent conduct of their employer that threatens them imminently with physical impact.

Id. at 556. Here, regardless of the severity of plaintiff's physical injury from the assailant's having hit her with a telephone, the fact that she was threatened with physical impact is sufficient under FELA to attach potential liability for any emotional harm arising from the incident.

unavailing defendant's insistence that plaintiff needed a retained expert opinion to show causation for her claimed injuries. Plaintiff's evidentiary proffer presents circumstantial, direct, and expert evidence sufficient to establish questions for the jury regarding causation. There is evidence (1) that Ms. Ramsay suffers from emotional distress originating, in whole or in part, from her experience at work, (2) that she experienced a physical attack from an unruly passenger that shocked her and caused her some physical pain, and (3) that, prior to this event, Amtrak had been made aware of unruly passengers intimidating people in the waiting area at night but did not take reasonable measures to mitigate the danger to its employees. This scenario does not involve a complex scientific or medical phenomenon requiring an expert to explain how defendant's negligence may have played a role, however slight, in plaintiff's injury. We believe that the common knowledge possessed by the members of a jury panel is sufficient to evaluate the causal link between these asserted facts and plaintiff's physical and emotional status, just as it was sufficient in the cases of the hearing loss in Tufariello and the hand injury in Kendall.

## CONCLUSION

For the reasons explained above, we DENY defendant's motion for summary judgment.

The parties are to submit their joint pretrial order, motions in limine, voir dire and other pretrial filings by Friday, May 29, 2015. Trial is set to begin at 12 noon on Monday, June 15, 2015 in Courtroom 17D of The United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York, 10007.

Dated:    New York, New York
          May 7, 2015

                    SO ORDERED.

                    _____

                    MICHAEL H. DOLINGER
                    UNITED STATES MAGISTRATE JUDGE

34

Copies of this Order have been sent to:


Fredric M. Gold, Esq.
Fredric M. Gold, PC
450 Seventh Avenue
Suite 405
New York, NY 10123

John Anthony Bonventre, Esq.
Charles W. Mondora, Esq.
Landman Corsi Ballaine & Ford, P.C.
One Gateway Center, Fourth Floor
Newark, NY 10279